**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4164-16T2

W.M.,

    Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES,

    Respondent-Respondent.

_____

        Argued May 8, 2018 — Decided June 26, 2018

        Before Judges Reisner and Mitterhoff.

        On appeal from the New Jersey Department of
        Human Services, Division of Medical Assistance
        and Health Services.

        John Pendergast argued the cause for appellant
        (Schutjer Bogar, attorneys; John Pendergast,
        on the brief).

        Jacqueline R. D'Alessandro, Deputy Attorney
        General, argued the cause for respondent
        (Gurbir S. Grewal, Attorney General, attorney;
        Melissa H. Raksa, Assistant Attorney General,
        of counsel; Jacqueline R. D'Alessandro, on the
        brief).

PER CURIAM

Appellant W.M. appeals from an April 18, 2017 final agency determination by the Director of the Division of Medical Assistance and Health Services (DMAHS) that denied his application for Medicaid. We reverse.

W.M. was admitted to institutional care at Cranford Rehab in December 2012. On December 27, 2013, W.M.'s wife, E.M., filed a Medicaid application on behalf of her husband with the Union County Division of Social Services ("the County"). On January 27, 2014, the County requested additional information concerning income verification, life insurance information, and household expenses. The Medicaid Coordinator for Cranford Rehab supplied the requested information. Shifra Weiss[1], one of Cranford Rehab's Medicaid Coordinators, followed up with telephone calls to the County throughout the remainder of 2014 and into the beginning of 2015. Weiss received no formal correspondence during that timeframe, but claimed that she was repeatedly advised verbally that the application was still under review. On February 2, 2015 and March 26, 2015, the County made additional requests for verifications regarding bank statements, the surrender of any life insurance policies, and proof of spend down to the resource limit.

---

[1] DMAHS' assertion that Shifra Weiss was not authorized to act on W.M.'s behalf does not have sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

On April 7, 2015, the County sent a letter dismissing the application. The reason given for the dismissal was "Excess Resources and failure to provide verifications." On April 13, 2015, the County sent a letter denying the application. Again, the reason given for the denial was "Excess Resources and failure to provide verifications." The County provided further explanation by providing a list of resources and their values as of September 1, 2013. These resources included a Lincoln National Life Insurance policy, a Prudential policy, a Pacific Life Mutual IRA, and a Sun America account. The letter claimed that the total balance for the accounts listed was $171,784.30, and that W.M. and E.M. did not "provide [] documentation that [they] . . . spend [sic] down to the $119,240.00 resource limit." The letter stated that if W.M. and E.M. had surrendered any of these resources, they should "provide verification of date surrendered, the amount, and account number the check was deposited in." The letter specified that this proof was required within the next ten days or the case would remain denied.

In response, Weiss submitted verification that the Pacific Life Mutual IRA policy was "fully surrendered" as of October 8, 2013, which would have shown that W.M. was clearly under the $119,240 resource limit at the time his application was filed. The agency deemed this documentation insufficient, and sent a

letter dated April 28, 2015, which confirmed receipt of this additional information, but also stated:

> The Variable Annuity Interim Statement that was provided for the Pacific Life Mutual IRA . . . is unacceptable. It only reflects scheduled withdrawals and does not state the running balance, which must be provided. Perhaps that information is on one of the other pages to the statement. We only received pages 27 and 28. Please send the missing pages 1-27, as well as page 29. Also, documentation was not provided verifying that the withdrawn money was used to pay household expenses.

The letter instructed that proof of any spend down would need to be submitted within ten days. Via fax dated April 30, 2015, Weiss sent the entire interim statement, and clarified that the money had been transferred to a Wells Fargo account for use in privately paying Cranford Rehab and for other household expenses, per an invoice from the rehabilitation center. The County responded that the documentation was still deficient and maintained the denial of W.M.'s claim.

W.M. filed a request for a fair hearing and the matter was transferred to the Office of Administrative Law (OAL) on December 14, 2015. At the hearing, agency witnesses urged that the April 30, 2015 submission was inadequate to verify that the Pacific Life policy was valueless at the time that W.M. applied for Medicaid. The Administrative Law Judge (ALJ) disagreed and found that:

A-4164-16T2

> [H]ad they examined the document more closely, they could have seen that it clearly contains a running record of withdrawals. Until in or about November 2012, $1,239.58 was generated monthly by the annuity. The document reflects a significant change at the time W.M. entered full-time institutional care in December 2012. Large amounts of money, $14,000 per month, were thereafter withdrawn monthly until October 8, 2013, when the policy was surrendered.

The Pacific Life document included a glossary, which stated that the "surrender value" was "[t]he amount available for withdrawal on the last day of the statement period, which is the contract value less any applicable contract debt, annual fee, optional rider charges and withdrawal charges." The definition of "full surrender" was "[a] full withdrawal of the contract value." The Pacific Life document stated that a "Full Surrender" happened on October 8, 2013, which was more than two months before W.M.'s application for Medicaid was filed.

In her written decision dated April 28, 2016, the ALJ found that it was "uncontroverted that W.M. was financially eligible for Medicaid at this time of his December 2013 application." The ALJ disagreed that the family and its representatives failed to timely supply verification that the Pacific Life policy had no value at the time of W.M.'s Medicaid application. In addition, the ALJ opined that "the agency woefully failed to meet its obligations under the administrative code" because the agency failed to move

the case promptly through the approval process. Accordingly, the ALJ concluded that "the action of the agency in denying him benefits for failure to verify his resource level is baseless, and should be reversed."

On July 22, 2016, the DMAHS Director issued an Order of Remand instructing the ALJ to flesh out what efforts E.M. made prior to April 28, 2015 to provide the requested documentation. The Director also noted that "I too am curious to know why UCBSS waited a year to request additional information from E.M."

On remand, the ALJ found that after her initial application and then submitting additional information, E.M. heard nothing about her application until it was denied in April 2015. In response to the question on remand of whether any information was outstanding at the time of the April 2015 denial, the ALJ found that no information was outstanding and that it should have been clear to the County as of April 2015 that the Pacific Life policy had been surrendered and had no value. The ALJ incorporated her earlier conclusions of law by reference, and further concluded that nothing warranted the agency's delay in issuing its denial letter to W.M.

On April 18, 2017, the DMAHS Director again reversed the ALJ's determination. The Director noted that "[t]he issue here is not merely whether Petitioner had properly verified that he

surrendered the Pacific Life policy, but rather whether that information was timely submitted to UCBSS."  Because W.M. failed to provide verification of a Lincoln National Life Insurance policy, a Prudential policy, a Pacific Life Mutual IRA or a Sun America account prior to the April 13, 2015 and April 28, 2015 denials, the Director reversed the ALJ's decision and reinstated UCBSS' denial.

On appeal, W.M. asserts that the Division's refusal to acknowledge or review the information submitted in response to the April 13 and April 28, 2015 denial letters was arbitrary, capricious and unreasonable.

An appellate court will not reverse the decision of an administrative agency unless it is "arbitrary, capricious or unreasonable . . . or not supported by the substantial credible evidence in the record."  Barrick v. State, 218 N.J. 247, 259 (2014) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).  In cases where an agency head reviews the fact-findings of an ALJ, a reviewing court must uphold the agency head's findings even if they are contrary to those of the ALJ, if supported by substantial credible evidence.  In re Silberman, 169 N.J. Super. 243, 255-56 (App. Div. 1979).

There is one fact that is completely unrefuted in this case: at the time of W.M.'s December 17, 2013 application, he met the

eligibility requirements for Medicaid. That is so because, equally unrefuted, the Pacific Life policy with a value of $130,000 had been fully surrendered on October 8, 2013, two months before the application. The surrender of the Pacific Life policy put plaintiff well below the $119,240 spend limit. The other policies held by W.M. - the Lincoln National Life Insurance policy, the Prudential policy, and the Sun America account - had, as UCBSS was aware, only minimal value and thus were incapable of disqualifying him. Accordingly, the only issue before the court is whether DMAHS acted reasonably in maintaining its denial based on the fact that proof of the surrender of the Pacific Life policy was not provided until after the April 28, 2015 denial.

We find that the agency's persistence in denying this meritorious claim based on the alleged untimeliness of W.M.'s document submission was arbitrary, capricious and unreasonable. At the outset, the agency after receiving the application did not expeditiously act on the application; rather, as the ALJ found, the application languished with no action for over a year, only to be abruptly denied in April 2015.

Moreover, neither the April 13, 2015 denial nor the April 28, 2015 denial were categorical denials. To the contrary, each letter invited W.M. to submit additional documentation.

> If any of the above have been surrendered,
> provide verification of the date surrendered,
> the amount, and the account number the
> check(s) were deposited in. Proof of any
> spend down to the resource limit is required.
> For example, receipts from paying the Nursing
> Home or other household expenses may be
> submitted.

In response, Weiss submitted verification that the Pacific Life Mutual IRA policy was "fully surrendered" as of October 8, 2013, which would have shown that W.M. was clearly under the $119,240 resource limit at the time his application was filed. Although the agency deemed this documentation insufficient, its letter dated April 28, 2015, likewise left the door open for a further response:

> The Variable Annuity Interim Statement that
> was provided for the Pacific Life Mutual IRA
> . . . is unacceptable. It only reflects
> scheduled withdrawals and does not state the
> running balance, which must be provided.
> Perhaps that information is on one of the
> other pages to the statement. We only received
> pages 27 and 28. Please send the missing pages
> 1-27, as well as page 29. Also, documentation
> was not provided verifying that the withdrawn
> money was used to pay household expenses.

The letter instructed that proof of any spend down would need to be submitted within ten days. Via fax dated April 30, 2015, Weiss sent the entire interim statement, and clarified that the money had been transferred to a Wells Fargo account for use in privately paying Cranford Rehab and for other household expenses,

per an invoice from the rehabilitation center. As the ALJ correctly found, the proofs submitted by Weiss on behalf of W.M. conclusively established that the Pacific Life policy had no value as of October 8, 2013 and that W.M. therefore met the eligibility requirements for Medicaid.

As the ALJ correctly found, it should have been clear to the County as of April 2015 that the Pacific Life policy had been surrendered and had no value. We conclude that for DMAHS to maintain its denial of the application based on the fact that the documents were submitted two days after the April 28, 2015 denial letter was arbitrary, capricious and unreasonable.[2] Accordingly, we reverse the agency's April 18, 2017 decision denying the application and remand with direction that the agency promptly grant the application.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Having determined that DMAHS' denial must be reversed, we need not address W.M.'s remaining arguments concerning the agency's affirmative regulatory obligations to obtain financial information.

A-4164-16T2